Let's wait and let everyone get settled. Okay, Mr. Melkonian. Thank you, Your Honor. I may please the court. My name is Raffi Melkonian. I represent the appellant in this matter, Ramey & Schwaller, LLP. Sometimes I might refer to the firm as R&S. The question presented in this case, Your Honor, is whether the owner and sole partner of Ramey & Schwaller, William Ramey, was barred from taking PPP loans, that is Paycheck Protection Program loans, under the CARES Act during the COVID-19 emergency. The district court held that he was, under a regulation that states that anyone who is subject to, presently subject to, an arraignment, indictment, or information is barred from taking the loans. We believe that that judgment was error and should be reversed. So let me start with what I think is common ground between the parties. Mr. Ramey was never arraigned, never indicted, and he was never subject to a criminal information. I think everyone agrees about that, including the district court. The SBA could easily have captured the kind of arrest warrant that Mr. Ramey was subject to in the questions it asked. And indeed, it asks exactly that question in other kinds of forms. So there is a form that I cite at the beginning of my opening brief where they ask, have you been arrested in the last six months? And if they had asked that question, certainly Mr. Ramey would have said yes to that question. You're saying that there was no criminal information? There was no criminal information. There was a criminal complaint? There was a criminal complaint. I thought that under Texas state law, the same document can serve as both a criminal complaint and a criminal information. That's the Drummond case? Yes, Your Honor. That's what the district judge said, but that's incorrect in this context. And let me explain why. As Drummond points out, there are three kinds of criminal complaints in Texas law. One is an Article 15 criminal complaint. That's what is involved in this case. That gets you a criminal arrest warrant. The second kind is an Article 21 or 22 criminal complaint. That is a pertinent to an information. And so if you file one of those with an information and the suspect waives indictment, that can be a charging instrument by itself. But the Article 15 criminal complaint, that's the one we're talking about in this case, is not a charging instrument for a felony. It never is. You have to either be indicted or there has to be a criminal information filed against you later. Well, what was the purpose of scheduling and rescheduling the rearrangements? Your Honor, I think that they were trying to see if they could get an indictment or an information against Mr. Ramey. They never did. Was the arraignment scheduled or pending? It hadn't happened yet at the time the application was filed? At the Article 15.17 hearing, so the issue of this criminal complaint, you go in front of a magistrate and they read you your rights and things like that. They schedule an arraignment. But that doesn't mean the arraignment's going to happen. But wasn't it pending at the time the application was filed? That schedule was out. So there was a pending arraignment in the sense that if an indictment had been returned against Mr. Ramey, there would be an arraignment. But the magistrate, I thought the state magistrate had scheduled the arraignment, it got put off a few times, COVID happened. But at the time he applied for this loan, the arraignment was still out in the future, right? The arraignment was in the future, Your Honor. Wasn't he subject to an arraignment at that point? No. Wasn't he subject to other means by which formal criminal charges are brought? No. Also no, but let me explain. What do you do with the record that repeatedly calls this a charge? It is a charge, Your Honor. It's a criminal complaint under Texas law. But let me try to answer it. Did anybody ever ask the SBA for clarification or the bank for clarification, hey, would this be covered? Your Honor, I don't think they did. Why not? I can't answer that. It's not in the record and I don't know, Your Honor. But as far as you know, nobody asked anything about it. They just checked no. As far as I know, in this record, there's no indication that anyone asked anything about that, Your Honor. But let me explain why. Wouldn't that be a prudent thing to do to make sure you were answering the question right before you certified that you were? Your Honor, it might be, but I think we need to think about what the context of the situation is. We're in the middle of COVID-19. The government is pushing money out to business owners to make sure that people can get their paychecks because the government itself is keeping them from going to work. And that is what happened here. Mr. Ramey immediately took this money and gave it to his employees so that they could continue getting their paychecks in the middle of the COVID-19 emergency. So I agree with you that it's sort of in the, you know, hypothetically, it'd be nice that if everything was tied up, but that's not what happened as far as I know, and I don't think it makes any difference. Let me explain why that other criminal, former criminal charges language doesn't do anything for AMIGI, because I know Your Honor asked about that. What I think that language means is, look, were you indicted? Is there an information or is there a arraignment? Or were you charged with a formal criminal charge in a jurisdiction? That's why that word jurisdiction is in there. In a jurisdiction where they call that something else. So let's imagine you were arrested in France. It's an inquisitorial criminal procedure system. They don't call it an arraignment. They don't call it an indictment. They call it something French. You don't get to skip around the regulation just because you were arrested for a serious crime in France. That's what that language means. But if you're trying to interpret the regulation like a statute, which I think you have to, you look at those first three words, indictment, arraignment, information, and you think, what are those? Those are all documents that indicate a formal charge. And then it's only other things like that in jurisdictions that don't call it that. So I don't think that that other formal means is appropriate here to have used. And I think where the district judge, this is Judge Hoyt, he said. But it doesn't say other formal means. It says other means by which formal criminal charges are brought. Wouldn't this have led to that if the grand jury had indicted instead of no build? If the grand jury had indicted him, then the language would clearly cover it. There again, you didn't know that when the application was filed, checking that box no in April 2020. No, Your Honor, but the SBA could easily have asked, have you been arrested? Just like they do in many other forms. And the command from the president and Congress in this situation was, get money in the hands of business owners so they can give it to their employees. And so they did not ask that question on purpose. Now, they don't say that, unfortunately, in the regulatory structure that, hey, we took away the arrest question in order to make sure that people can get this money. But that is what effectively they were doing. So this is not a, I think when you're dealing with the government, you have an obligation to turn tight corners. We all know that from sort of tax cases. But I don't think you have to give them information they aren't asking for. And here the government just did not ask, and AMIGI did not ask, anything about an arrest or a criminal complaint. Well, even if it wasn't a false answer, why was it not a misleading answer, given the ongoing proceedings that you've acknowledged were there? Your Honor, I think false and misleading, first of all, there's no reason to believe they're any different in this case. I don't, they've never made an argument that misleading is, you know, much lower a standard than false or something like that. The question is whether the answer was true or not, and the answer is true. He was not subject to any of these things at the time that he made his loan application. But he knew that an arraignment was pending. Yes, Your Honor, he knew why. Yeah, he'd been served with criminal information. That's right, Your Honor. But the exact same thing would have happened if he had arrested for, let's say, a traffic violation under a 15.17 complaint. And if the reading of my friends on the other side is right, that any preliminary to an arraignment, then even in that situation, you'd be barred from taking a PPP loan. And that just is not what the regulators were trying to do. They used those words on purpose and specifically to make sure that they were asking about pending criminal felony charges, like indictments and arraignments and information. So I don't think that the fact that an arraignment was scheduled as a formal matter, even though the main prerequisite of an arraignment, which is an indictment, had not happened, makes any difference here at all. Is there anything in the record that they may not have asked for clarification from the bank? Is there anything in the record suggesting that anybody at the firm researched the question to validate any of the argument that you're making now, in other words, that the regulation means what you now say it means at the time? I don't think anything like that is in the record. I think we have a summary judgment motion where I believe Mr. Ramey put in a declaration about his belief of what this meant at the time. I don't want to represent that to you, Your Honor, because I don't remember reading that recently. But I'm pretty sure that that's what happened. But no, I don't think the declaration says, I researched this and I looked at these documents and so on and so forth. But what I would say in response to that is that this is a very emergent situation. These regulations were flowing out of the government extremely quickly. I think you were under an obligation to read the documents the government was giving you, which he did, and nothing in there says that an arrest disqualifies you from taking this kind of loan. But I mean, your argument has a little bit of internal tension, does it not? Regulations were flowing out very quickly from the government, and we all remember what was happening during the pandemic. It was exigent. But you want to hold the government regulators to a degree of precision that perhaps is not there, or a degree of deliberation about arrest versus not, versus arraignment, versus all that, that's not there. I think if this was... Doesn't that suggest that the, or any other means, would be a catch-all that meant to cast a net? No, Your Honor. No, okay. And the reason is because these words that we're talking about are words the SBA always uses. They know exactly what they mean. Whenever you're taking an SBA loan, they ask you a series of qualification questions. This is one of them, and then the arrest one is another one. And again, that's cited in my brief in the opening brief. And so if they want to expand the kinds of bars that are available, they know exactly how to do that. They can ask about bankruptcies. They can ask about arrests. They can ask about all kinds of other potential disqualifications. And they didn't do that here, I think, very successfully. I can't recall. I'm sorry. It's been a minute or two since I read the briefs. Do you have any case law that interprets the SBA language, since it was carried over from other contexts, that says, this doesn't include something like this? No, Your Honor. This question, to my knowledge, has never arisen. And that, I don't have good cases for me, but I don't think my friends on the other side have a bad case for me either. The language seems to have never been interpreted in the context of an arrest. Usually, if you find those cases, there are a couple cases where someone is barred from an SBA loan, they're always indicted. That's what the trigger always is. Either they're indicted or there's been an information where they agreed to waive indictment. I have looked exhaustively and have not been able to find a case where someone was just arrested and they were barred. If I could turn briefly to my friends on the other side argument that Mr. Ramey would have been presently incarcerated, but for bail. That's something they say sort of in passing, and I did want to address it, because presently incarcerated is one of the bars in the regulation. Again, the SBA knows perfectly well how to capture bail. Because if you look at the regulation, they say you are disqualified if you're on parole or if you're on probation. And they don't say bail. And there's a reason they don't say bail, because again, they don't want to capture people who were merely arrested in these bars. And so the idea that Mr. Ramey could have been presently incarcerated at the time of the loan application, even if we accept that incarcerated means being in jail pending trial, just has no purchase here at all. The other argument I wanted to address, even though it's entirely forfeited from my perspective, is the other side's argument that Mr. Ramey was under an order of protection at the time of the loan application, which is another of the potential bars in the regulation. First of all, I want to be very clear about this. That is an entirely forfeited argument. They didn't press it below. You can look at ROA 811, which is their motion for summary judgment. No argument like that in there at all. You can look at the letter that they sent to Mr. Ramey when they asked for the money back. They say you lied about being subject to an information. That's their whole point. So that's not an argument they made there, and it's not an argument they have made here as an alternative ground for affirmance. They make it only in passing in a footnote. It is black-letter Fifth Circuit law that arguments supported, excuse me, subordinated merely in a footnote are not pressed. So that argument, I think, is off the table and, you know, just isn't available there. And also I would note that on their business loan agreement, that's not even one of the arguments they made. If the panel has no further questions, I'll yield back the rest of my time. Yes. You said time for rebuttal. Thank you, Mr. O'Connor. Mr. Wild? Good morning. May it please the Court, my name is Carlton Wild, and I represent Zions Bank Corporation doing business as Amogee Bank. We are here asking the Court to affirm the lower court's judgment, which properly applied Texas contract law and determined that Mr. Ramey breached the Amogee loan documents, the business loan agreement, the promissory note, and the PPP loan application, question five. I'd like to address two issues. First, Amogee's loan documents are valid and enforceable. There has been a suggestion or a claim from counsel opposite that that's not accurate. I'd like to first focus on a subset of the loan documents, that is the business loan agreement and the promissory note. Those documents are consistent with the CARES Act, with the PPP interim final rules and guidance, and with SBA forms. PPP frequently asked questions number 19 and 21 provide guidance. They say lenders may use their own promissory note or an SBA form promissory note. The SBA form promissory note, which is part of the record, defines loan documents very broadly. Documents related to the loan, essentially anything that's generated in connection with the loan, is defined as a loan document under the SBA's form promissory notes. In paragraph four of that SBA form promissory note, they talk about events of default, and there are a number that are pertinent to our discussion here this morning. One event of default is if the borrower fails to do anything required by the SBA note and loan documents, again, loan documents broadly defined. A second event of default is if the borrower does not disclose any material fact to either the lender or the SBA. A third event of default under the SBA form promissory note is if the borrower makes a false or misleading representation to the lender or the SBA. And a final one, event of default under paragraph four of the SBA form promissory note, becomes the subject of a civil or criminal action that the lender believes may materially affect borrower's ability to pay the note. So that's what the form SBA note provides, which the rules tell us the banks can use in addition to their own. Now, there are a number of places where false statements are prohibited in the SBA documents. In fact, I need to get another one. In the PPP borrower application form, an SBA document, it says, or the borrower must certify, I further certify that the information provided in this application and the information provided in all supporting documents, again, anticipating there will be a broad source of other documents and forms, is true and accurate in all material respects. That's the PPP borrower application form. SBA interim final rule dated April 15 of 2020, the day before Mr. Ramey submitted his application, says essentially the same thing. It's a certification that all the information provided and all the documents, forms related are true and correct. The general SBA borrower application form for Section 7A loans, which the PPP is a subset, has a similar language, a certification by the borrower, information provided is correct in this form, in all supplementary documents, forms, et cetera. So that's what the SBA says is required. Let's look at AMIGI's loan documents. In the business loan agreement, again, broad definition of loan documents, essentially anything that's generated in connection with the loan. There are specific representations that the borrower makes in the business loan agreement. One relates to litigation and claims. Long litany of claims, actions, also includes investigations, says pending or threatened. That's an affirmative representation that the borrower, Mr. Ramey, made that there were none, or more accurately, he didn't disclose that there were. There's some affirmative covenants also in the business loan agreement that are applicable. If there is a claim, investigation, procedure, et cetera, as delineated in the business loan agreement, that happens after the application is filled, Mr. Ramey is under an affirmative duty to inform the lender of those existing or threatened claims or investigations, is what the language says. Both the business loan agreement and the promissory note define as an event of default, any false or misleading statement that is given regarding any material fact. So I think as it relates to AMIGI's loan documents, the business loan agreement, the promissory note, and the PPP application, they're enforceable, they're valid, based upon the guidance we have from the SBA, because they're similar to, consistent with the forms and the guidance that I've just run through from the SBA, and Mr. Ramey breached them in connection with his response, his answer. Wouldn't those clauses contemplate the presence of an arraignment, the existence of an arraignment? Not necessarily, and that takes me to my second point, if you'll give me, just if you'll indulge me for a second. The second issue is what was going on, as both you, Judge Clement, and you, Judge Wilson, mentioned on April 16th of 2020, when Mr. Ramey signed and submitted the application for the PPP loan. We know how he answered question five, and it's our view that that was incorrectly. The court below, we believe, properly applied Texas contract law as it relates to the litany of issues that are, of items that are in question five, including an arraignment, but starting first with the complaint, I think again, under Texas contract law, the court below concluded that the complaint met the substantive requirements for the information, and we've talked about some of those in the cases that we've cited that deal with statute of limitations, graining jurisdictions, speedy trial act, et cetera. So the trial court below properly found, in my view, in our view, based upon Texas contract law, that the complaint was in substance and information. As it relates to the arraignment and the article . . . Mr. Milconian says that an Article 15 criminal complaint is different, and that's how he distinguishes the Drummond case. Will you address that? Sure. And let me just, from a global standpoint, say one of the things, places where I think we part paths with counsel opposite, is what's controlling law. If Texas criminal procedure were controlling, if we were here because Mr. Ramey had been tried and convicted on a complaint only, then I think he would have a valid argument that, hey, wait a minute. I've got a valid appellate point. You didn't go through all the steps that you needed to. But that's not what we're here to answer. The answer is from a contract perspective, given all the circumstances, whether it's a complaint that has the substantially the same as an information, whether it's an Article 1517 hearing, which is similar to an arraignment, the court found, I would also note in passing that in their brief, they point out that an Article 1517 hearing is, quote, called an arraignment in other jurisdictions. They quote that in their papers, and the site is to Watson v. State, which is a Texas Court of Criminal Appeals en banc decision. And remember, so they acknowledge that an Article 1517 hearing is an arraignment in other jurisdictions, and recall Question 5 asks about the litany, is applicant subject to indictment, criminal information, arraignment, other means by which formal criminal charges are brought in any jurisdiction. And that, of course, makes sense because the SBA guidelines and forms are not just being used in Texas, they're being used all over the country. And again, they seem to acknowledge that an Article 15 hearing, which is different from an arraignment under Texas criminal procedure, Judge Smith, I agree with that. But Texas Court of Criminal Appeals has also said in other jurisdictions, it's the same as an arraignment. And let me get to, I think, your question from earlier, Judge Clement, as it relates to other means. And I want to remind the court of everything that was going on when Mr. Ramey submitted his application on April 16th of 2020. We know a complaint had been filed. We know an arrest warrant had been issued. We know he'd had the Article 1517 hearing, where he was formally charged. HPD took his cell phone. He posted bail. There was emergency protective order that restricted his liberty. He couldn't communicate with the victim. He couldn't contact the victim's family. He couldn't possess a firearm. And as you asked earlier, Judge Clement, there were a number of arraignments that were set and reset. There was one on November 11th of 19. There was one on January 28th of 20. In that one, the note on the reset form says, defense counsel to get state grand jury packet. The reason for the reset was because the defense counsel was going to give to the grand jury the packet. I think it's not much of an inference to say if that's why the defense counsel is asking for a reset, that a grand jury was either impaneled or was about to be impaneled. That was the reset asked for in January of 20. Reset again for February of 20. And then reset again for April 27th, sorry, 2nd of 2020, six days after Mr. Ramey submits his application on the 16th. On a Thursday, he knows the next Wednesday he has an arraignment. And if you look at the reset form, it'll say case reset type arraignment is written in there. Next to it, the defendant signs it. So Mr. Ramey signed the reset form resetting the arraignment for April 22nd of 22, six days after he submitted the PPP application. So I think when you apply all the facts, the court's conclusion, complaint equals information, 1517 arraignment, I'm sorry, 1517 hearing similar to arraignment is an arraignment in other jurisdictions and everything Mr. Ramey knew on that Thursday of April 16, 2020, he signed or he submitted an improper false answer to question five. And also in doing so, he violated the provisions of the business loan agreement and the promissory notes. So why didn't you raise the issue of him being subject to an arraignment in your brief? I think we did in our summary judgment motion. I mean, to the court. I don't have an answer for that. I mean, we raised it in, I know it's in our summary judgment motion. And unless there are other questions, I'll yield back the rest of my time. Thank you, Mr. Wilde, Mr. Oconian for rebuttal. Thank you, Your Honor. A few brief points. First, a lot of that argument I just heard is brand new. It's not in any of the briefs. It's not in the district court's opinion. It's not in anything anyone has ever argued before. All this stuff about how the contract actually has all these other provisions and that's what was violated, that's not what the district court said here at all. The district court said that this is an information because it contains some of the aspects of an information. And again, as I've explained, that doesn't work because this is not the right kind of complaint as my friend on the other side conceded in his argument a few minutes ago. It's a different kind of complaint. It has nothing to do with the kinds of complaints that State v. Drummond is talking about or any of the cases that are talking about statute of limitations are talking about. So these are all new arguments that this court does not need to reach. All you need to say in this opinion is it's not an information, as Judge Gilmer found, and it's not an other means by which formal criminal charges are brought, as Judge Hoyt said. That's it. All this other stuff is just not before you. In terms of this argument, the factual argument that essentially Mr. Ramey knew that there was a scheduled arraignment, but he didn't tell anybody, that's, we understand that there's a scheduled arraignment, but that's not the question the SBA asked. The SBA could have asked that question easily. Like I said, they could have asked a much better question of have you been arrested and they would have gotten exactly the answer that was needed, but that's not the question they asked and it's not the question they asked on purpose because they were trying to make sure people were getting their money as soon as possible. Other than that, I don't know that I have anything further unless this court has additional questions. All right. Thank you, Mr. McConey. Thank you.